### 4222. FIRST DISTRICT AGRICULTURAL & MECHANICAL SCHOOL et al. v. REYNOLDS.

1. The industrial and agricultural schools organized, established, and maintained in each congressional district of this State in accordance with the provisions of the act of 1906 (Georgia Laws 1906, p. 72; Civil Code, § 1552 et seq.) are not such public institutions of the State as would be exempt from suit on contracts made by their trustees within the scope of the authority delegated to them by the terms of the act in question.
2. These branch schools are made departments of the University of Georgia by the act creating them; and the University of Georgia is expressly incorporated as a body corporate and politic, with the right to sue and be sued; and in creating these branch schools, it was the purpose of the legislature that they should stand in the same relation to the State and to the public in this respect as the university stood.
3. A contract made by the trustees of the First District Agricultural and Mechanical School, for the purchase of furniture to equip the school, was within the scope of the authority delegated to them, and is enforceable against the school and the trustees thereof in their official capacity.

DECIDED OCTOBER 9, 1912.

Attachment; from city court of Statesboro—Judge Strange. April 6 1912.

*T. S. Felder, attorney-general, Brannen & Booth,* for plaintiffs in error.

*Dean & Dean, Johnston & Cone,* contra.

HILL, C. J.   The Ware-Hatcher Furniture Company of Atlanta sold some furniture on open account to the First District Agricultural & Mechanical School, located at Statesboro. $1,000 was paid on the account, leaving a balance of $627.60 due. The vendor was subsequently adjudicated bankrupt, and the trustees, under an order of the bankruptcy court, sold and transferred this account to J. H. Reynolds, who sued out a purchase-money attachment in the city court of Statesboro, naming as defendants in his suit the school and its trustees by name. The defendants, at the appearance term, made a motion to dismiss the suit, on the ground that the school was an integral part of the State, being a State institution, and was therefore exempt from suit, in the absence of legislative consent. The motion was overruled, and, in the absence of any defense, the plaintiff made out formal proof of his account and took judgment. The defendants excepted.

The First District Agricultural & Mechanical School was authorized and established under the provision of the act of 1906 (Georgia Laws 1906, p. 72), codified in § 1552 et seq. of the Civil Code of 1910. By this act it is declared that said schools "shall be branches of the State College of Agriculture, a department of the University of Georgia." By § 1553 provision is made for the maintenance of these schools from fees received from the inspection of fertilizers, oils, and other inspection fees received by the department of agriculture in this State. By § 1554 the Governor is authorized to appoint trustees of these schools; and § 1555 provides for the acceptance by the trustees of donations made by any citizen of land, or other property, for the maintenance of such schools, and for the location of the schools, and other provisions of the code give to the trustees authority to equip the schools, and to build and rent property in connection with the schools; and it is contemplated by the act that these schools shall be supported and maintained, not only by limited appropriations made annually by the State, but by private and personal donations. It may be stated that the agricultural and mechanical schools thus established and declared to be branches of the State College of Agriculture, the latter being a department of the State Uni-

versity, are State institutions to a certain extent. A careful examination of the act creating these schools in the different congressional districts of the State makes it apparent that it was the intention of the legislature to make them all a part of the State University, standing in the same relation to the State that the State University stands. Now the trustees of the University are expressly created "a body corporate and politic, by the name of the 'Trustees of the University of Georgia,' by which they shall have a perpetual succession, have and use a common seal, and be a person in law, able to plead and be impleaded, to hold and acquire real and personal estate, with power to lease and otherwise manage the same for the good of the University. All money or property granted by the State, or individuals, for the advancement of learning in general, is vested in such trustees." Civil Code, § 1364. And § 1397 designates the branches of the university, naming among them the State College of Agriculture.

From the fact that the University of Georgia itself, which may be called the trunk of the tree of education in the State of Georgia, was incorporated as a body politic, with power to sue and be sued, it would seem to follow that all of its branches, distinctly made a part of the trunk, would be clothed with the same power and be subject to the same law. When the State expressly gave its consent for its university to be sued, this was express consent that all the branches of the university could also be sued. The Supreme Court of North Carolina, in the case of County Board of Education v. State Board of Education, 106 N. C. 83 (10 S. E. 1002), holds that where the State incorporates an institution and provides, among other things, that it "may sue and be sued as such," this is sufficient consent to its being sued. In *Medical College of Georgia* v. *Rushing*, 1 *Ga. App.* 468 (57 S. E. 1083), this court held, that "the Medical College of Georgia is not a public institution of the State because it is designated by law as a branch of the University of Georgia; and it is liable for the torts of its agents in the conduct of its business and within the scope of their authority;" and we think also that these agricultural and mechanical schools, established under the provisions of the act of 1906, although they are made branches of the State College of Agriculture, are a department of the State University, and that the whole scheme of the legislature relating to their establishment, management, and main-

tenance contemplates that although in a measure largely supported by the State, yet when the appropriation is made it ceases to be the property of the State and becomes the property of the individual school, and is held by the trustees of the school for its benefit, and not for the benefit of the State at large. These trustees are authorized to equip these schools and to maintain and operate them, and it would seem that this would include the right to buy furniture for the school and such other property as would be necessary in its maintenance and operation. In the case of *Knight v. State,* 137 *Ga.* 537 (73 S. E. 825), it is held that where funds arising partly from oil-inspection fees and partly from private donations had been turned over to and were in the hands of trustees of a school of agriculture and mechanical arts, established in a particular congressional district, under the Civil Code, § 1552 et seq., and were deposited by the treasurer of the board of trustees in his own name, as such, in a bank which was a State depository, and which failed, this did not constitute such a debt due to the State as created a lien in its favor by virtue of its general sovereignty. From that decision it follows that the money of these schools arising from inspection fees and private donations is not the property of the State, but the property of these institutions and subject to the debts created by the trustees.

A careful study of the legislation relating to the entire system of schools and colleges composing the University of Georgia would seem to indicate that it intended to make all these subsidiary institutions stand in the same relation to the State and the public as the university stands and be subject to sue and be sued. This. is the only reasonable construction to be placed upon such legislation. The legislature could not have intended to authorize the trustees to maintain these schools, to authorize private donations to be made to them, to authorize their equipment and management, and to put the public on notice of the right to deal with them, without the necessary implication that as to these schools the State would not claim the constitutional exemption from suit. If the public understood that in dealing with these schools through their boards of trustees, it was dealing with the State in its sovereign capacity, and would have to resort to the legislature of the State to be paid debts created by the trustees for the purpose of equipping and maintaining the schools, both the management and

usefulness of such schools would be largely impeded, if not alto-
gether destroyed. In embarking in an enterprise which is usually
carried on by private individuals or companies, it was the intention
of the State to waive as to this enterprise its sovereign character,
and to confer upon individuals the right to enforce by suit con-
tracts made by the trustees in pursuance of the powers delegated
to them by the act. *Western & Atlantic Railroad Co.* v. *Carlton,* 28
*Ga.* 180.

It follows, from what we have said, that the contract for the
purchase of furniture, made by the trustees in behalf of the First
District Agricultural and Mechanical School, was clearly within
the scope of the authority delegated to them as such trustees. It
was a part of their express work in equipping the school; and the
vendors of this furniture, or their lawful assignees or transferees,
were fully authorized to sue out a purchase-money attachment for
the balance due on the furniture, and the lower court.did not err
in refusing to dismiss the suit.            *Judgment affirmed.*