Barbara Mullaly HOWARD, as Next Friend and Guardian of Joshua Mullaly, a Minor Child, and Barbara Mullaly Howard, Individually, Plaintiffs,

v.

LIBERTY MEMORIAL HOSPITAL, Chen Shih, M.D., and Grace Bautista, M.D., Defendants.

No. CV 490–214.

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 10, 1990.

agencies and departments, but also to any "public body corporate and politic." Because the hospital authority that owns Liberty Memorial falls into this category, both the hospital authority and Liberty Memorial are entitled to state sovereign immunity unless the state specifically waives it. The state has waived sovereign immunity to the extent of any liability insurance coverage. Thus, Liberty Memorial does not claim complete immunity from this suit, but only immunity from any judgment in excess of $500,000, the coverage under its liability insurance policy.

The plaintiffs oppose Liberty Memorial's motion, asserting that the state has waived sovereign immunity not only to the extent of liability insurance, but also for judgments in excess of that insurance coverage. The plaintiffs also suggest that the defendant has more than $500,000 of insurance coverage. After careful consideration, the Court has determined that the plaintiffs' contentions lack merit. The Court GRANTS the defendant's motion for partial summary judgment. If it is later determined that Liberty Memorial is liable in this case, any judgment entered will not exceed $500,000.

Furthermore, the Court finds that the plaintiffs' brief in opposition to this motion contains misstatements of the law. These misstatements violate Federal Rule of Civil Procedure 11. The plaintiffs' attorney has ten days to provide a good defense to the imposition of sanctions.

Don C. Keenan, Atlanta, Ga., Jeffrey W. Lasky, Savannah, Ga., Jonathan Schochor, Kerry D. Staton, Baltimore, Md., for plaintiffs.

William P. Franklin, Jr., Savannah, Ga., for Grace Bautista, M.D.

Wallace E. Harrell, Brunswick, Ga., Albert Fendig, Jr., James B. Durham, Brunswick, Ga., for Chen Shih, M.D.

Billy N. Jones, Hinesville, Ga., for Liberty Memorial Hosp.

## ORDER

EDENFIELD, Chief Judge.

This is a medical malpractice action arising out of injuries that the infant Joshua Mullaly sustained during childbirth. One of the defendants, Liberty Memorial Hospital ("Liberty Memorial"), has moved for partial summary judgment, claiming state sovereign immunity. Georgia accords state sovereign immunity not only to state

## ANALYSIS

I. *Standards for Partial Summary Judgment*

Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct.

at 2553; *see Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990). It is then the non-movant's burden to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-movant's case. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987).

All reasonable doubts about the facts are to be resolved in favor of the non-movant, although "the non-moving party ... bears the burden of coming forward with sufficient evidence of every element that he or she must prove." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

A court may grant a partial summary judgment if there are some issues of material fact still in controversy. Federal Rule of Civil Procedure 56(d) allows a Court to "make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy...." The Court enters this order pursuant to Rule 56(d).

## II. *State Sovereign Immunity* [1]

■ The Constitution of Georgia provides that "[s]overeign immunity extends to the state and all of its departments and agencies." Ga. Const., Art. I, § II, Para. IX (1983). Hospital authorities, such as the one that owns Liberty Memorial, were created by the Hospital Authorities Law, O.C. G.A. § 31–7–70 (1985), as local, not state, instrumentalities. *Fulton–DeKalb Hosp. Auth. v. Gaither*, 241 Ga. 572, 573, 247 S.E.2d 89 (1978), *superseded by statute on other grounds as stated in, Fulton–DeKalb Hosp. Auth. v. Dean*, 169 Ga.App. 277, 312 S.E.2d 156 (1983). Even though it is not a state agency, a hospital authority enjoys state sovereign immunity, unless the state waives the immunity, because it is a "public body corporate and politic." *See id.*, 241 Ga. at 575, 247 S.E.2d 89; *Hall v. Hospital Auth.*, 93 Ga.App. 319, 91 S.E.2d 530 (1956).

The same provision of the Georgia Constitution, however, waives sovereign immunity "as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided, but only to the extent of any liability insurance provided." Ga. Const., Art. I, § II, Para. IX (1983). Liberty Memorial has a $500,000 liability insurance policy and concedes that its sovereign immunity is waived to the extent of that policy. It seeks an order of summary judgment for any damages that might be awarded in excess of $500,000.

The plaintiffs urge the Court to deny the defendant's motion for summary judgment for several reasons. First, the plaintiffs claim that the Hospital Authorities Law completely waived the defendant's sover-

---

**1.** The Court wishes to note one threshold matter. "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985). The Court must therefore question its jurisdiction *sua sponte*. *Latin–American Prop. & Cas. Ins. Co. v. Hi–Lift Marina, Inc.*, 887 F.2d 1477, 1479 (11th Cir.1989).

At first blush, this case appears to implicate the eleventh amendment. Actually, however, the defendant has no eleventh amendment immunity because it is not a state agency for eleventh amendment purposes. *See Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir.1990) (explaining the three part test for determining whether an entity is a state agency). Instead, the hospital authority is a local agency, *Fulton–DeKalb Hospital Authority v. Gaither*, 241 Ga. 572, 573, 247 S.E.2d 89 (1978), which is autonomous from the state, submitting its annual reports and budgets to local political subdivisions, O.C.G.A. § 31–7–90 (1985), and which receives most of its funding from local taxes, O.C.G.A. § 31–7–84 (1985), although the state also has the authority to make grants. O.C.G.A. § 31–7–94 (1985).

eign immunity. Second, the plaintiffs claim that the state constitution completely waived any state sovereign immunity that the defendant might have. Finally, the plaintiffs argue that the defendant may have established a program of self-insurance or may have access to other non-governmental revenues. If so, the plaintiffs want to ensure that they can reach these funds.

### a. Waiver in the Hospital Authorities Law?

■ According to the plaintiffs, the Hospital Authorities Law waives Liberty Memorial's state sovereign immunity by granting hospital authorities the power "to sue and be sued." O.C.G.A. § 31–7–75 (1985). The plaintiffs urge the Court to reject a recent Georgia Supreme Court holding that this language does not constitute a waiver. According to the plaintiffs, this holding is erroneous and violates the Georgia Constitution. This argument is meritless.

In support of their contention that the "sue and be sued" language of the Hospital Authorities Laws waived sovereign immunity, the plaintiffs rely primarily on *Medical Center Hospital Authority v. Andrews*, 250 Ga. 424, 297 S.E.2d 28 (1982). That case held: "we construe the intent of the General Assembly on reiterating the sue or be sued language to be an express waiver of sovereign immunity for hospital authorities." *Id.* at 426, 297 S.E.2d 28. *Andrews* was overruled, however, in *Self v. City of Atlanta*, 259 Ga. 78, 377 S.E.2d 674 (1989). In *Self*, the Georgia Supreme Court stated:

In the various cases in which this court has determined whether "sue and be sued" language or its equivalent constitutes a waiver of sovereign immunity, this court has reached different results. Compare, e.g., *Tounsel v. State Highway Dept.*, supra 180 Ga. [112, 178 S.E. 285 (1935) ] (holding that such language did not constitute a waiver) with, e.g., *Medical Center Hosp. Auth. v. Andrews*, supra 250 Ga. [424, 297 S.E.2d 28] (holding that such language did constitute a waiver). The list of opinions interpreting language of this type is long, and for our present purposes we need not recapitulate and analyze them. It is sufficient to say that, after careful reconsideration of those cases, we are now of the opinion that the correct view is that such language should be read as providing an entity with the status and capacity to enter courts, and not as waiving sovereign immunity. . . .

We now hold that in any instances in which an entity is given the power "to sue and be sued" that language means only that the entity has the status and capacity to enter our courts, and does not signify a waiver of sovereign immunity against suit. Any cases that hold to the contrary are hereby overruled.

*Id.* at 80, 377 S.E.2d 674.

Although *Self* did not enumerate all of the cases it overruled, it clearly overruled not only *Andrews*, which it mentioned specifically, but every single one of the cases on which the plaintiffs rely for their argument. Despite this clear, sweeping language, the plaintiffs cite these overruled cases, and insist that *Self*'s "amorphous rulings" are not dispositive of the issue of Liberty Memorial's sovereign immunity. The plaintiffs criticize the *Self* opinion for failing "to specifically identify any decisions which it intended to overrule." Even a cursory reading of *Self* reveals that *any* cases supporting the plaintiff's position on this issue are overruled. The plaintiff suggests that this Court should follow earlier, overruled decisions of Georgia state courts because they carefully discuss the issue in its historical and constitutional perspective, while the most recent Georgia Supreme Court decision is bereft of "serious legal analysis of existing precedents and without customary and necessary attention to legal details." Brief in Opposition at 9. The plaintiffs also urge this Court to follow Judge Benham's Georgia Court of Appeals opinion in *Self v. City of Atlanta*, 188 Ga.App. 81, 372 S.E.2d 283 (1988), which distinguished quasi-governmental entities from governmental entities. Of course, this subtle distinction was rejected by the supreme court, which held that "sue and be

sued" language does not waive sovereign immunity regardless who the defendant is. Any first year law student knows that a federal court sitting in diversity cannot reject the holding of the state supreme court on an issue of state law. There is no exception to this rule if the federal court disagrees with the state supreme court, and there is certainly no exception if the federal court believes the state supreme court did not provide a law review-style historical background section in its opinion.

After a careful study of the plaintiffs' brief, the Court discerns that the plaintiffs contend that the Georgia Supreme Court's decision in *Self* violated the Georgia Constitution. They state: "It is therefore, evident (i) that the doctrine sovereign immunity [sic] is of constitutional status; (ii) that Article I, Section II, Paragraph IX of the 1983 Constitution incorporated the judicial interpretations of sovereign immunity existing as of its effective date; and (iii) that the constitutional sovereign immunity doctrine may not properly be judicially modified." Brief in Opposition at 4.

■ The clearest support for the plaintiffs' position is Justice Gregory's special concurrence in *McCafferty v. Medical College of Georgia*, 249 Ga. 62, 287 S.E.2d 171 (1982). Justice Gregory suggested that the constitution adopted the existing judicial interpretations of the "sue and be sued" language. He stated: "The waiver of sovereign immunity was incorporated into the Constitution." *Id.* at 70, 287 S.E.2d 171 (Gregory, J. concurring specially). Of course, *Self* overruled *McCafferty*, and even if it had not done so, Justice Gregory's concurrence would not bind this Court.

Chief Justice Jordan dissented in *McCafferty*, and criticized Justice Gregory's view of the constitutional issue. He noted:

> In a long line of cases, and as recently as *Sikes v. Candler County*, 247 Ga. 115 [274 S.E.2d 464] (1981), this Court has consistently held that "only by the express consent of the State can it be made amenable to suit." *Sikes*, at 117 [274 S.E.2d 464].

*Id.* at 72, 287 S.E.2d 171 (Jordan, C.J., dissenting). Because waiver of sovereign immunity requires express consent, Chief Justice Jordan believed the Court should not construe the ambiguous "sue and be sued" language as a waiver of sovereign immunity. Incorporation of the ambiguity into the constitution was irrelevant in his view. *Id.* The majority of the Georgia Supreme Court has not addressed this precise issue, but the *Self* decision assumes that the constitution does not incorporate this language as a waiver of sovereign immunity. This Court agrees with this unstated assumption. The Georgia Constitution does not require courts to construe the "sue and be sued" language as a waiver of sovereign immunity.

■ The plaintiffs also base their constitutional argument on the proposition that "the last sentence of subsection (a) of this constitutional amendment [Article I, Section II, Paragraph IX(a) of the 1983 Constitution] expressly precludes the expansion of the doctrine of sovereign immunity beyond its scope as of 31 December 1982." Because *Andrews* was decided on December 15, 1982, the plaintiffs contend that this constitutional provision prohibits *Self* from overruling *Andrews*. Either the plaintiffs have not read carefully and in its entirety the provision on which they rely, or they have attempted deliberately to mislead this Court. The last sentence of subsection (a) states in full:

> The provisions of this paragraph shall not have the effect of permitting the state or any of its departments or agencies to interpose the defense of sovereign immunity as to any action against the state or any of its departments or agencies filed prior to January 1, 1983, if such defense could not have been interposed on December 31, 1982.

Ga. Const., Art. I, § II, Para. IX (1983). This amendment does *not* expressly preclude expansion of the sovereign immunity doctrine. Instead, it merely prohibits retroactive application of the amendment. The sentence says absolutely nothing about suits filed, as this one was, after January 1, 1983. The Court wonders whether plaintiffs' counsel believed that the Court would not read the cited constitutional provision or would read it and fail to understand it.

At any rate, the plaintiff's counsel is apparently "laboring under the impression that I am not dealing with a full deck and that my knowledge of [constitutional interpretation] is about equal to that of a low-grade moron." *Randazzo v. Eagle–Picher Indus.*, 117 F.R.D. 557, 557 (E.D.Pa.1987). Rule 11 sanctions appear in order, as discussed below.

### b. Waiver of Sovereign Immunity in Contract Actions

■ According to the plaintiffs, "the present constitutional amendment addressing sovereign immunity expressly provides that sovereign immunity is waived as to any action for breach of contract. Article I, Section II, Paragraph IX(a) of the 1983 Constitution of the State of Georgia." Plaintiffs' Brief in Opposition at 12. Because actions for medical malpractice sound in contract as well as tort, *Scott v. Simpson*, 46 Ga.App. 479, 167 S.E. 920 (1933); *Wolfe v. Virusky*, 306 F.Supp. 519 (S.D.Ga.1969), *rev'd on other grounds*, 470 F.2d 831 (5th Cir.1972), the plaintiffs urge the Court to conclude that this constitutional provision waives sovereign immunity in this case. In reality, the constitutional amendment waives immunity to "any action ex contractu for the breach of any *written* contract...." Ga. Const., Art. I, § II, Para. IX(a) (1983) (emphasis added). Obviously an implied contract for medical services is not a written contract. The plaintiffs have not produced any written contract; they base this "contract action" on the "implied warranty that the services will be performed in a manner generally accepted by others rendering such services in like and similar circumstances." Plaintiffs' Brief at 13. The plaintiffs once again have misstated the Georgia Constitution in an attempt to survive this summary judgment motion. When zealous advocacy leads counsel to misstate the law, Rule 11 sanctions are warranted. Sanctions will be discussed below.

### c. Waiver of Sovereign Immunity to the Extent of Liability Insurance: Has the Defendant Disclosed All of its Insurance Funds?

■ As the defendant concedes, its sovereign immunity is waived to the extent of its liability insurance. Anton F. Jeselnik, the hospital administrator of Liberty Memorial, swears in his affidavit that the hospital had a $500,000 insurance policy, but "did not have any other insurance in place which would provide coverage for the incident alleged in plaintiff's complaint." Thus, the defendant has met its initial burden of showing that the hospital's sovereign immunity is waived only to the extent of the policy. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

The plaintiffs complain that the defendant has not shown that it did not have a self-insurance program. Mr. Jeselnik testified that the hospital "did not have any other insurance," and presumably he meant no other insurance of any kind, including self-insurance. The plaintiffs offer no evidence to contradict this position. As noted above, if the defendant, the party moving for summary judgment, demonstrates that the record reveals no genuine issue of material fact, then the plaintiffs, as the non-moving parties, must establish, by going beyond the pleadings, that there is a genuine issue as to facts material to their case. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). The plaintiffs have no evidence of self-insurance; they have not shown any facts to preclude summary judgment. The plaintiffs also complain that the defendant has not shown that a judgment in excess of the insurance policies could not be satisfied from funds derived from non-governmental assets. The defendants need not make this showing to benefit from the doctrine of sovereign immunity. Cases cited by the plaintiff on this point concern charitable immunity, not sovereign immunity, and are therefore inapposite.

Because the defendant has shown that it is entitled to sovereign immunity for any judgment in excess of its liability insurance, the Court GRANTS the motion for partial summary judgment. Now the Court will turn to the issue of Rule 11 sanctions.

### III. *Rule 11 Sanctions*

■ Rule 11 of the Federal Rules of Civil Procedure, as amended in 1983, requires attorneys to inquire about the facts and the law before filing pleadings. *Advisory Committee Note.* By requiring prefiling inquiries, the Rule is designed to " 'reduce frivolous claims, defenses, or motions' and to deter 'costly meritless maneuvers,' thus avoiding unnecessary delay and expense in litigation." *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (en banc). In addition to inquiry, an attorney who submits a pleading must certify that:

> to the best of the [attorney's] knowledge, information, and belief formed after reasonable inquiry [the pleading] is well grounded in fact *and is warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....

Fed.R.Civ.P. 11 (emphasis added). If someone violates Rule 11, a court must, upon motion or its own initiative, impose on the person who signed the pleading, a represented party, or both, an "appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11; *see Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 876 (5th Cir.1988) (en banc) (once a violation of Rule 11 is found, the Court *must* impose appropriate sanctions on the plaintiffs or plaintiffs' attorney).

The Court does not know why the plaintiffs' attorney had advanced plainly meritless arguments here. It is possible that he has plausible reasons for doing so. The plaintiffs' attorney may contend that he argued in good faith that *Self* violated the constitution. It is more difficult to justify encouraging this Court to reject *Self,* the most recent Georgia Supreme Court pronouncement in the area, because its reasoning was not detailed enough. Most egregious were the plaintiffs' misstatements of the law. First, plaintiffs' attorney asserted that Article I, Section II, Paragraph IX(a) of the Georgia Constitution expressly precludes expanding the doctrine of sovereign immunity beyond its scope as of December 31, 1982. It does no such thing. Then, the plaintiffs' attorney indicated that the same provision waives sovereign immunity for all actions sounding in contract; it waives immunity only for actions for breach of *written* contract. The Court cannot imagine how the plaintiffs' attorney could justify these misstatements of the law. Accordingly, the Court contemplates sanctioning the plaintiffs' attorney.

Before a court imposes an appropriate sanction for a Rule 11 violation, however, it must give the person to be sanctioned due process. What process is due in a Rule 11 case depends on the circumstances of the case. *Donaldson,* 819 F.2d at 1558. Generally, however, due process requires "that the attorney (or party, where applicable) has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition." *Id.* at 1559–60. Fair notice depends on the kind of violation:

> If an attorney is said to have submitted a complaint without any basis in fact, Rule 11 alone should constitute sufficient notice of the attorney's responsibilities since the rule explicitly requires the attorney to certify that a complaint is well grounded in fact. On the other hand, questions of whether an attorney made a good faith argument under the law or whether an attorney interposed a pleading, motion, or other paper for an improper purpose are more ambiguous and may require more specific notice of the reasons for contemplating sanctions. If sanctions are proposed to be imposed on the client, due process will demand more specific notice because the client is likely unaware of the existence of Rule 11 and should be given the opportunity to prepare a defense.

*Id.* at 1560. Accordingly, the Court will give plaintiffs' attorney a chance to respond, for to comport with due process "[t]he accused must be given an opportunity to respond, orally or in writing as may be appropriate, to the invocation of Rule 11 and to justify his or her actions." *Id.* The plaintiffs' attorney may submit a brief and

any other written evidence responding to the Court's plan to impose Rule 11 sanctions within ten days after the date of this order. The Court will consider any arguments the plaintiffs' attorney may assert before it finally determines whether Rule 11 has been violated and what sanctions might be appropriate.[2]

## CONCLUSION

The defendant Liberty Memorial has moved for partial summary judgment because it is entitled to sovereign immunity from any judgment in excess of its liability insurance. The plaintiffs object on several grounds. None of the plaintiffs' arguments have any merit, and accordingly the Court GRANTS the defendant's motion for partial summary judgment. Moreover, some of the plaintiffs' assertions in the brief in opposition to the summary judgment motion are flagrant misstatements of the law. Accordingly, unless the plaintiffs' attorney has a good defense, the Court will impose a fee on the plaintiffs' attorney as a sanction for violation of Rule 11. The plaintiffs' attorney has ten days to respond, if he desires to do so.

SO ORDERED.

**2.** The Court, however, has considerable discretion in determining what sanctions are "appropriate." *Donaldson*, 819 F.2d at 1557. The Eleventh Circuit has noted that financial penalties against the lawyer rather than the client are often "the most effective and fair means of enforcing Rule 11 and deterring baseless suits." *Id.*