**CITY OF RANGER, Appellant,**

v.

**MORTON VALLEY WATER SUPPLY CORPORATION and Staff Water Supply Corporation, Appellees.**

No. 11–01–00091–CV.

Court of Appeals of Texas, Eastland.

June 20, 2002.

Rehearing Overruled Aug. 1, 2002.

Jim Mathews, Joe Freeland, Mathews & Freeland, Austin, for appellant.

Edmond McCarthy, Jr., Karen Watkins, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for appellees.

Panel consists of ARNOT, C.J., and McCALL, J., and DICKENSON, S.J.[*]

Opinion

W.G. ARNOT, III, Chief Justice.

The issues in this case involve contracts for the supply of water from a municipality to nonprofit rural water supply corporations. In separate wholesale water supply contracts, the City of Ranger agreed to sell limited quantities of its excess water to both Morton Valley Water Supply Corporation and Staff Water Supply Corporation.[1] After the City increased the price of the water, Morton Valley and Staff brought a declaratory judgment action requesting the district court to declare that the contracts were valid and enforceable and that the City had breached the contracts. The trial court found the rate provisions in the contracts to be valid and enforceable, construed the contracts to include charges for the City's debt service obligation as a cost of water, and found that the City had breached the contract. All parties have appealed. We affirm.

We note that both Morton Valley and Staff have also filed an appeal with the Texas Natural Resource Conservation Commission (TNRCC) to challenge the wholesale water rates charged by the City. TEX. WATER CODE ANN. § 13.043 (Vernon 2000). In a joint pretrial order, the parties stipulated that the Commission would review the rates established by the declaratory judgment relief. We feel obligated to point out that this court shall not address issues reserved for the TNRCC, such as the reasonableness of the rates being charged by the City. The only issues being resolved by this appeal are those relating to the validity and the construction of the contracts.

The City asserts in its sole issue on appeal that the trial court erred in determining that the rate provisions in the contracts are valid and enforceable and that they cannot be modified by the City pursuant to its governmental rate regulation authority. Appellees assert two issues on appeal, arguing that the trial court erred in construing the terms of the contract with Morton Valley and the contract with Staff to include the City's debt service obligation.

The underlying facts in this case are undisputed, and the case was tried on stipulated facts filed in a joint pretrial order. The City, a municipal corporation and home-rule city, entered into a wholesale water supply contract with Morton Valley in 1967. That contract provides that the City will supply and Morton Valley will purchase water at a rate of cost plus ten percent. Specifically, the contract provides as follows:

> The consideration to be paid by [Morton Valley] to the City shall be City's cost plus Ten (10%) per cent. The term "City's cost" as used herein shall mean and include the following as determined by the City's independent auditor after the close of each fiscal year: (1) Cost of water furnished to City by Eastland County Water Supply District being the sum of $3743.00 monthly plus .07¢ per one thousand gallons. (2) The amount of the Eastland County Water Supply District taxes collected within the City of Ranger.... The cost shall be computed by City each year within 90 days after the close of the preceding fiscal year.

\* \* \*

[*] Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. Both Morton Valley and Staff were organized pursuant to TEX. WATER CODE ANN. § 67.002 (Vernon Supp.2002).

CONSTRUCTION. It is the intention of the parties that the City of Ranger shall earn a clear net profit of ten per cent of its actual cost computed in accordance with paragraph 5(b) above on all water delivered to [Morton Valley] under the terms of this agreement, and any person or court shall be guided by this intention in the construction hereof.

In 1993, the City entered into a similar contract with Staff. The Staff contract provides that Ranger will supply and Staff will purchase water under the following terms:

Effective January 1, 1992, Ranger and Staff agree that the price of water to be purchased by Staff shall be seventy eight (.78) cents per one thousand gallons of water delivered to Ranger's Lake Leon master water meter located near the Eastland County Water Supply District's treatment plant and ninety three (.93) cents per one thousand gallons of water delivered to Staff's LaCasa master water meter located on Tiffin Road. It is understood and agreed that this price shall remain in effect through ... the effective date of any water price increase from the Eastland County Water Supply District to Ranger. Thereafter, the price by and between Ranger and Staff for water sold hereunder shall be determined as follows:

(a) The price for each one thousand (1,000) gallons of water delivered to Staff's Lake Leon master meter shall be 25% over the actual price per thousand (1,000) gallons of water charged by Eastland County Water Supply District to Ranger.

(b) The price for each one thousand (1,000) gallons of water delivered to Staff's LaCasa master meter shall be 50% over the actual price per one thousand (1,000) gallons of water charged by Eastland County Water Supply District to Ranger.

The Staff contract further provides that, in the event a price adjustment is required, the City is to provide documentation and calculations regarding its "actual cost of water" from the Eastland County Water Supply District. Both Staff and Morton Valley have an obligation to pay for water actually taken, but neither has an obligation to take any water under their contract.

The City receives its water supply from the Eastland County Water Supply District. Pursuant to contracts dated 1952 and 1992, the monthly charge for water sold to the City consists of an operating charge and a debt service charge. Both charges are based upon the amount of water supplied to the City, but the debt service obligation is effective even if the City receives no water. Pursuant to their contracts with the Eastland County Water Supply District, the City of Ranger and the City of Eastland agreed to pay their proportionate share of the debt service obligation for water revenue bonds issued by the District to finance the cost of improvements to the District's water system. Neither Staff nor Morton Valley participated in the City's contract with the District.

The parties in this case stipulated that the amount of $3,743, which was shown in the Morton Valley contract as a "cost of water" furnished to the City, was a fixed charge representing the City's payment to the Eastland County Water Supply District for "debt service." The parties also stipulated that the initial rates of $.78 and $.93 per 1,000 gallons as set out in the Staff contract represented the City's actual cost of water per 1,000 gallons plus the appropriate percentage increases over the actual cost. The actual cost of water was calculated by adding the monthly operating charge and the monthly debt service charge. At some point in time and for an

unknown reason, the City stopped including charges for the debt service in its bills to Morton Valley and Staff and, therefore, eventually began losing money by supplying water to Morton Valley and Staff. Subsequently, the City adopted a resolution to recoup more than the contractual rate, and this suit was filed.

We hold that the trial court did not err in construing the terms of the contracts. Neither party contended that the terms of the contracts were ambiguous. Courts must interpret the language of an unambiguous contract as a matter of law. See *DeWitt County Electric Cooperative, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *Columbia Gas Transmission Corporation v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). The rates initially provided for and agreed to in the contracts included a charge for the City's debt service obligation as part of its cost of water. It is clear from the language in the contracts that the intent of the parties to the contracts was to include the debt service charge when determining the City's cost of the water. The trial court did not err in interpreting the terms of the contract to include, as a matter of law, the debt service charge in the City's cost of water.

Furthermore, we hold that the trial court properly ruled that the contracts with Morton Valley and Staff are valid and enforceable. These contracts do not interfere with a governmental or legislative power to regulate water rates. The City correctly points out that a home-rule municipality has the power to regulate the rates that it charges for water; however, this power applies to the regulation of rates within the city, not to the rates charged to another supplier on a wholesale basis outside the boundaries of the municipality. TEX. WATER CODE ANN. §§ 13.042(a), 13.082, & 13.083 (Vernon 2000). To provide the wholesale supply of water to a nonresident retail supplier is to provide a proprietary function. *City of Big Spring v. Board of Control*, 404 S.W.2d 810, 812 (Tex.1966)(construing former TEX.REV.CIV.STAT. art. 1108 (1937), which is now TEX. LOC. GOV'T CODE ANN. § 402.001 (Vernon 1999)). The City's contracts with Staff and Morton Valley were structured to allow the City to recompute and alter the amount charged each fiscal year so that the City continued to make a profit. The fluctuation in the rates to be charged under the contracts depended on the cost of water to the City. The contracts do not bind the City's governing body to a specific rate, are not ultra vires, and are lawful. See TEX. GOV'T CODE ANN. § 791.026 (Vernon Supp. 2002); TEX. LOC. GOV'T CODE ANN. § 402.001(c) (Vernon 1999); *City of Big Spring v. Board of Control*, supra at 813; see also TEX. WATER CODE ANN. § 67.010(a) (Vernon Supp.2002). All of the issues on appeal are overruled.

The judgment of the trial court is affirmed.