6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00070-CV


______________________________





IN RE: RANDY E. WILLIAMS








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Ross and Carter, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Randy E. Williams has filed a petition pro se asking this Court to issue a writ of mandamus
against the Texas Department of Criminal Justice-Institutional Division. He asks this Court to enter
a number of orders, most of which have to do with his work activities at the prison and the
application of good time credits because of that work. He also complains generically that requiring
him to do manual labor subjects him to a "condition of peonage, involuntary servitude, and slavery."

 This Court has jurisdiction to issue a writ of mandamus against "a judge of a district or
county court in the court of appeals district." Tex. Gov't Code Ann. § 22.221(b) (Vernon Supp.
2003). We do not have the authority to issue a writ of mandamus against a state agency in this
context. Accordingly, as we do not have mandamus jurisdiction over the real party in interest, we
cannot consider this petition on its merits.

 The petition is denied.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 28, 2003

Date Decided: May 29, 2003




in-right: 0.5in">If a proprietary function does not include governmental functions, a function\
containing a governmental component cannot be considered proprietary, and\
therefore must be governmental. Thus, in regard to mixed functions, the rule now\
seems to be that if any one component of a function is governmental, the entire\
function will be considered governmental, and an action involving that function will\
have to be brought under the Tort Claims Act.
\
 \
Christopher D. Jones, Comment, Texas Municipal Liability: An Examination of the State and\
Federal Causes of Action, 40 Baylor L. Rev. 595, 615 (1988). We agree. The introduction of a\
proprietary element into an activity designated by the Legislature as governmental does not serve to\
alter its classification. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(c) (Vernon Supp. 2004)\
("The proprietary functions of a municipality do not include those governmental activities listed\
under Subsection (a).").
\
'

var WPFootnote4 = '
While the Texas Tort Claims Act waives governmental immunity, waiver is limited to\
claims arising from property damage, personal injury, and death. Tex. Civ. Prac. & Rem. Code\
Ann. § 101.021 (Vernon 1997).
\
'

var WPFootnote5 = '
For further discussion of the proposition that the provisions of the Texas Local Government\
Code do not waive governmental immunity, but merely outline a municipality\'s capacity as a\
corporate entity, see A. Craig Carter, Is Sue and Be Sued Language a Clear and Unambiguous\
Waiver of Immunity?, 35 St. Mary\'s L.J. 275, 287–90 (2004); George C. Kraehe, "There\'s\
Something About Cities": Understanding Proprietary Functions of Texas Municipalities and\
Governmental Immunity, 32 Tex. Tech L. Rev. 1, 33–39 (2000). See also City of San Antonio v.\
Butler, 131 S.W.3d 170, 177 (Tex. App.—San Antonio 2004, pet. filed); Satterfield & Pontikes\
Constr., Inc. v. Irving Indep. Sch. Dist., 123 S.W.3d 63, 66 (Tex. App.—Dallas 2003, pet. filed); City\
of Dallas v. Reata Constr. Corp., 83 S.W.3d 392, 399 (Tex. App.—Dallas 2002), rev\'d on other\
grounds, No. 02-1031, 2004 Tex. LEXIS 303 (Tex. Apr. 2, 2004); but see Satterfield, 123 S.W.3d\
at 78–81 (Lang, J., dissenting) (examining the "unmistakable clarity of the Legislature\'s motivations"\
in using the "sue or be sued, plead or be impleaded" language as an express waiver of sovereign\
immunity).
\
'

var WPFootnote6 = '
We find persuasive the argument that both phrases—"sue and be sued" and "plead and be\
impleaded"—are intended to grant powers to cities and therefore should not be understood as being\
"clear and unambiguous" waivers of governmental immunity. But, for present purposes, whether\
we tend to agree with that argument is irrelevant. Until the Texas Supreme Court overrules its\
holding in Missouri Pacific Railroad that the phrase "sue and be sued" is a clear and unambiguous\
waiver of immunity, or otherwise resolves the split of authority in the Courts of Appeals, we believe\
we are bound by that decision, even if the phrases are more properly construed only as authority for\
municipalities to exercise certain powers. See City of Houston v. Clear Channel Outdoor, Inc., No.\
14-03-00022-CV, 2004 Tex. App. LEXIS 367, at *14 (Tex. App.—Houston [14th Dist.] Jan. 15,\
2004, pet. filed).
\
'

var WPFootnote7 = '
For an interesting analysis of the Legislature\'s reaction to Pelzel, see Satterfield, 123 S.W.3d\
at 80–81 (Lang, J., dissenting) ("[A]ny lingering doubt or concern about the effect that the phrase\
"sue and be sued" has on governmental immunity should have been assuaged when the Texas\
Legislature recently clearly identified the meaning it attributes to the language.").
\
'

var WPFootnote8 = '
In corresponding provisions, all municipalities are granted specific authority relating to\
lawsuits. A Type A general-law municipality, for example, "may sue and be sued, implead and be\
impleaded, and answer and be answered in any matter in any court or other place," Tex. Loc. Gov\'t\
Code Ann. § 51.013 (Vernon 1999); a Type B general-law municipality "may sue and be sued and\
may plead and be impleaded." Tex. Loc. Gov\'t Code Ann. § 51.033 (Vernon 1999). The language\
granting home-rule municipalities authority relating to lawsuits, however, states simply: "The\
municipality may plead and be impleaded in any court." Tex. Loc. Gov\'t Code Ann. § 51.075\
(Vernon 1999).
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00023-CV
______________________________


CITY OF TEXARKANA, TEXAS D/B/A 
TEXARKANA WATER UTILITIES, Appellants
 
V.
 
CITIES OF NEW BOSTON, HOOKS, DeKALB, WAKE VILLAGE, 
MAUD, AVERY, AND ANNONA, TEXAS, Appellees


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 02C0389-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Seven cities


 to which the City of Texarkana, Texas, d/b/a Texarkana Water Utilities, has
been supplying water for decades sued Texarkana in both contract and tort, asserting various causes
of action arising from that relationship. Texarkana asserted below that governmental immunity
completely bars the suit, but the trial court rejected its assertion. Texarkana now asks this Court to
uphold its claim of governmental immunity and dismiss the action entirely. Although we agree with
Texarkana that governmental immunity bars the causes of action sounding in tort, we conclude it
does not bar those sounding in contract. Accordingly, we affirm as to the contract claims, leaving
those pending for further action in the trial court, and reverse as to the tort claims, dismissing them.
 
 
 
 
 
 
 
 
 
 
Governmental Immunity, Generally
            It is well established in Texas that sovereign or governmental immunity


 protects the State,
its agencies, and its officials from lawsuits for damages, absent the Legislature's consent through
statute or legislative resolution. Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d
849, 853–54 (Tex. 2002); Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594
(Tex. 2001); Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). The courts have
uniformly held that "it is the Legislature's sole province to waive or abrogate sovereign immunity"
and that any waiver must be expressed clearly and unambiguously. IT-Davy, 74 S.W.3d at 853–54
(quoting Fed. Sign, 951 S.W.2d at 409); see Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2004)
(stating that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver
is effected by clear and unambiguous language"); Univ. of Tex. Med. Branch v. York, 871 S.W.2d
175, 177 (Tex. 1994). Because such immunity defeats a trial court's subject matter jurisdiction, a
plea to the jurisdiction asserting immunity requires de novo review. IT-Davy, 74 S.W.3d at 855
(citing Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998)).
Immunity Applies Among Cities
            Before reaching the question of waiver, we examine the Seven Cities' contention that
Texarkana cannot assert governmental immunity when sued by other state governmental entities. 
Texarkana and the Seven Cities are political subdivisions, or "governmental units," of the State as
defined by the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B)
(Vernon Supp. 2004). As such, they enjoy governmental immunity to the extent it has not been
abrogated by the Legislature. San Antonio Indep. Sch. Dist. v. McKinney, 936 S.W.2d 279, 283
(Tex. 1996) (citing City of Galveston v. Posnainsky, 62 Tex. 118 (1884)). Recognizing that the
parties in this case are all political subdivisions of the same sovereign, however, the Seven Cities
argue that Texarkana cannot claim immunity from their suit, because immunity is designed to protect
against actions brought by private parties, not against actions brought by other subdivisions of the
State.
            The Seven Cities cite two cases to support their position that Texarkana should not be
permitted to assert governmental immunity to bar their claims, Texas Workers' Compensation
Commission v. City of Eagle Pass, 14 S.W.3d 801 (Tex. App.—Austin 2000, pet. denied), and City
of Canyon v. Fehr, 121 S.W.3d 899 (Tex. App.—Amarillo 2003, no pet.). In the former, the Third
District Court of Appeals explained that "municipalities are created as political subdivisions of the
State and 'represent no sovereignty distinct from the state and possess only such powers and
privileges as have been expressly or impliedly conferred upon them.'" City of Eagle Pass, 14 S.W.3d
at 803 (quoting Payne v. Massey, 145 Tex. 237, 196 S.W.2d 493, 495 (1946)). The court reasoned
that because "[a] political subdivision's immunity is a privilege afforded it based on its existence as
a subdivision of the State," its "derivative immunity acts as a shield against actions brought by
private parties but not as a shield against the State, from which it derives its immunity." Id. at 804. 
In the latter, the Seventh District Court of Appeals similarly stated that because "sovereign immunity
exists as a means of protecting the independent sovereignty of the governmental unit[,] . . . it
operates to bar suits initiated by private third parties, not by entities in relation to which the
governmental unit has no independent sovereignty." Fehr, 121 S.W.3d at 902.
            Despite the apparent clarity of these positions, these two holdings are narrow and are easily
distinguished from the case at bar. The court in City of Eagle Pass summarized its reasoning by
agreeing that, "because municipalities and other political subdivisions of the State exist under the
authority of the State and are subject to the State's regulatory authority, such entities do not enjoy
sovereign immunity from state regulatory authority." City of Eagle Pass, 14 S.W.3d at 803
(emphasis added). While Texarkana's and the Seven Cities' authority derives from the State, neither
party can exercise regulatory authority over the other. They are, instead, considered coequal under
the law, neither party superior to the other. They share a common origin, but are wholly independent
of each other and, unlike a municipality attempting to exert immunity against the sovereign from 
 
which its rights and privileges were originally obtained, immunity for these cities remains as viable
a defense as when involved in a dispute by any other completely independent party.
            The Seven Cities' reliance on Fehr does not alter this analysis. There, two residents of the
City of Canyon sued the city for injunctive relief, seeking a decree ordering the city to abide by
various provisions of its local charter and to submit a rezoning issue to a referendum election. Fehr,
121 S.W.3d at 902. Canyon argued the lawsuit was barred by governmental immunity, but the court,
in light of the plaintiffs' claims, determined that "the citizenry [had] become the legislative branch
of the governmental unit involved" and concluded that "the doctrine of sovereign immunity cannot
be used by a municipality against itself." Id. This situation is not at all analogous to the claims
against Texarkana, a municipality entirely independent of the Seven Cities. We note also that courts
generally apply sovereign immunity analyses in disputes between state agencies. See, e.g., Tex. Dep't
of Transp. v. City of Sunset Valley, 92 S.W.3d 540 (Tex. App.—Austin 2002, pet. granted) (noting
that municipalities are themselves agencies of the State); City of Houston v. Northwood Mun. Util.
Dist. No. 1, 73 S.W.3d 304 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); Tex. Dep't of
Transp. v. City of Floresville Elec. Power & Light Sys., 53 S.W.3d 447 (Tex. App.—San Antonio
2001, no pet.). We, therefore, conclude sovereign immunity principles are to be applied horizontally
between governmental entities. That is, political subdivisions of government cannot assert immunity
against the sovereign from which its immunity is derived, but can assert immunity against other
governmental entities deriving their rights and privileges from the same source.
 
Immunity Bars These Tort Claims
            Having determined that Texarkana is entitled to invoke any viable governmental immunity
defense against the Seven Cities' claims, we now consider whether immunity applies given the nature
of the operations underlying this dispute. Texarkana argues its role in this dispute is clearly
governmental; while the Seven Cities contend their injuries stem, not from Texarkana's
governmental functions, but from its proprietary functions, potentially exposing Texarkana to
unlimited liability. See City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex. 1997) (explaining that the
Texas Tort Claims Act is applicable to a municipality only in connection with its governmental
functions).
            While the doctrine of governmental immunity protects municipalities from being sued in tort
for matters arising from the performance of their governmental functions (except as authorized by
the Texas Tort Claims Act), no such protection exists for municipalities performing their proprietary
functions. City of Corpus Christi v. Absolute Indus., 120 S.W.3d 1, 3 (Tex. App.—Corpus Christi
2001, pet. denied); see Tex. Civ. Prac. & Rem. Code Ann. §§ 101.0215(a), (b), § 101.023(c)
(Vernon Supp. 2004), § 101.025(a) (Vernon 1997). "Accordingly, when a municipality commits a
tort while engaged in a proprietary function[], it is liable to the same extent as a private entity or
individual." Absolute Indus., 120 S.W.3d at 3. The question on appeal, therefore, is whether
Texarkana's obligations under its agreement to provide water to the Seven Cities are considered
governmental or proprietary.
 
            Although waterworks and a number of other municipal functions have traditionally been
considered proprietary under the common law, Section 101.0215 of the Texas Tort Claims Act
reclassified them as governmental. See City of Odessa v. Bell, 787 S.W.2d 525, 527 (Tex. App.—El
Paso 1990, no writ); George C. Kraehe, "There's Something About Cities": Understanding
Proprietary Functions of Texas Municipalities and Governmental Immunity, 32 Tex. Tech L. Rev.
1, 18–22 (2000). The section now enumerates as governmental thirty-six municipal functions,
describing them as "those functions that are enjoined on a municipality by law and are given it by
the state as part of the state's sovereignty," including, among others, health and sanitation services,
sanitary and storm sewers, waterworks, dams and reservoirs, and water and sewer services. Tex.
Civ. Prac. & Rem. Code Ann. § 101.0215(a)(2), (9), (11), (19), (32) (Vernon Supp. 2004). Even
with this legislative designation, however, the Seven Cities contend that, while those water services
provided for Texarkana's citizens are clearly governmental, the relationship between Texarkana and
the Seven Cities should not be similarly construed. Unlike Texarkana's obligation to provide water
for residents within its municipal boundaries—an obligation "enjoined" on it by the State—the Seven
Cities argue that Texarkana voluntarily contracted to supply them with water services for profit,
making those activities proprietary. 
            The attempt to distinguish between the services provided by Texarkana for its own citizens
and for the citizens of the Seven Cities, however, is not so clear. While the Texas Tort Claims Act
"does not apply to the liability of a municipality for damages arising from its proprietary functions,
which are those functions that a municipality may, in its discretion, perform in the interest of the
inhabitants of the municipality," it expressly excludes those governmental activities listed in Section
101.0215(a) from those activities that may be considered proprietary. Tex. Civ. Prac. & Rem. Code
Ann. § 101.0215(b), (c) (Vernon Supp. 2004). Accordingly, "all activities associated with the
operation of one of the government functions listed in section 101.0215(a) are governmental and
cannot be considered proprietary, regardless of the city's motive for engaging in the activity." City
of San Antonio v. Butler, 131 S.W.3d 170, 177–78 (Tex. App.—San Antonio 2004, pet. filed) (citing
Tex. River Barges v. City of San Antonio, 21 S.W.3d 347, 356–57 (Tex. App.—San Antonio 2000,
pet. denied) (explaining that the city's removal of a barge company from a marina is included in the
governmental function of operating a marina and park even if the removal was motivated by the
desire to protect the city's profits)).


 Because the services Texarkana provides to the Seven Cities
cannot be distinguished from those governmental functions enjoined on Texarkana by the State, the
Texas Tort Claims Act applies, effectively barring the Seven Cities' tort claims.


 Therefore, we hold
that, as to the tort claims, the trial court erred by failing to grant Texarkana's motion to dismiss.
Immunity Does Not Bar These Contract Claims
            We now consider whether the trial court erred by failing to grant Texarkana's motion to
dismiss with respect to the Seven Cities' contract claims. As explained in Federal Sign,
[s]overeign immunity embraces two principles: immunity from suit and immunity
from liability. First, the State retains immunity from suit, without legislative consent,
even if the State's liability is not disputed. Second, the State retains immunity from
liability though the Legislature has granted consent to the suit.

            Immunity from suit bars a suit against the State unless the State expressly
gives its consent to the suit. In other words, although the claim asserted may be one
on which the State acknowledges liability, this rule precludes a remedy until the
Legislature consents to suit.

. . . .

            Immunity from liability protects the State from judgments even if the
Legislature has expressly given consent to the suit. In other words, even if the
Legislature authorizes suit against the State, the question remains whether the claim
is one for which the State acknowledges liability. The State neither creates nor
admits liability by granting permission to be sued.

Fed. Sign, 951 S.W.2d at 405 (citations omitted). As there is no dispute that Texarkana contracted
to supply water to the Seven Cities, immunity from liability is not at issue. Little-Tex Insulation Co.,
39 S.W.3d at 594 (State waives immunity from liability when it contracts). Nevertheless, because
the act of contracting waives only the State's immunity from liability, the question we must address
is whether Texarkana's immunity from suit was somehow waived, potentially exposing it to liability
on its contracts with the Seven Cities. See Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246,
248 (Tex. 2002); Little-Tex Insulation Co., 39 S.W.3d at 594–95; Fed. Sign, 951 S.W.2d at 408.
            Crucial to our analysis is the meaning of Section 51.075 of the Texas Local Government
Code, which states that home-rule municipalities like Texarkana "may plead and be impleaded in
any court." Tex. Loc. Gov't Code Ann. § 51.075 (Vernon 1999). The Seven Cities contend this
language constitutes an unambiguous legislative waiver of governmental immunity, thereby
conferring   jurisdiction   on   the   district   court.   Texarkana,   on   the   other   hand,   argues   that
Section 51.075, standing alone, does not effect a waiver of immunity; rather, it merely expresses an
element of a municipality's authority as a corporate entity.


 
            Although the Texas Supreme Court has yet to address whether the "plead and be impleaded"
language of Section 51.075 constitutes waiver of a municipality's immunity from suit, it did address
the effect of similar language in Missouri Pacific Railroad Co. v. Brownsville Navigation District,
453 S.W.2d 812 (Tex. 1970). There, the Court examined the phrase "sue and be sued," concluding 
the phrase "is quite plain and gives general consent" to be sued in Texas courts.


 Id. at 813. Since
the Court's opinion was issued in 1970, the majority of related cases decided by the courts of appeals
have similarly held that the words "sue and be sued" provide a general waiver of governmental
immunity from suit, see United Water Services, Inc. v. City of Houston, No. 01-02-01057-CV, 2004
Tex. App. LEXIS 3988, at *8–9, *22 (Tex. App.—Houston [1st Dist.] Apr. 29, 2004, pet. filed), and
the Court has continued to reaffirm this position. In 1997, for example, the Court again stated that
"'sue and be sued' met the legislative permission requirement." Fed. Sign, 951 S.W.2d at 408. In
2002, the Court's discussion of whether another statute clearly and unambiguously waived the State's
immunity from suit turned on the omission of the "sue and be sued" language. Pelzel & Assocs.,
Inc., 77 S.W.3d at 250. The Court reasoned that the statute in question did not waive immunity
because "the only language arguably waiving sovereign immunity" (i.e., the "sue and be sued"
language) was deleted from the statute, "suggesting that [the Legislature] intended to preserve
counties' immunity from suit."


 Id.
            A number of courts, including the Houston, Fort Worth, El Paso, and Fifth Circuit Courts of
Appeals, have treated the phrases "sue and be sued" and "plead and be impleaded" as being
synonymous. See City of Houston v. Clear Channel Outdoor, Inc., No. 14-03-00022-CV, 2004 Tex.
App. LEXIS 367 (Tex. App.—Houston [14th Dist.] Jan. 15, 2004, pet. filed) (finding no distinction
between the two phrases); see also Webb v. City of Dallas, 314 F.3d 797 (5th Cir. 2002); Goerlitz
v. City of Midland, 101 S.W.3d 573 (Tex. App.—El Paso 2003, pet. filed); Knowles v. City of
Granbury, 953 S.W.2d 19 (Tex. App.—Fort Worth 1997, pet. denied); Avmanco, Inc. v. City of
Grand Prairie, 835 S.W.2d 160 (Tex. App.—Fort Worth 1992, writ dism'd); City of Garland v.
Shierk, No. 05-99-00258-CV, 2000 Tex. App. LEXIS 3706 (Tex. App.—Dallas June 6, 2000, pet.
denied) (not designated for publication). As a result, these courts have concluded, at least impliedly,
that the phrase "plead and be impleaded" constitutes an unambiguous waiver of governmental
immunity in light of the Texas Supreme Court's holding in Missouri Pacific Railroad.
 
            Other courts, including the Waco, Dallas, and San Antonio Courts of Appeals, have reached
the  opposite  conclusion.  See  City  of  Carrollton  v.  McMahon  Contracting,  L.P.,  No.  05-04-00089-CV, 2004 Tex. App. LEXIS 4711 (Tex. App.—Dallas May 26, 2004, pet. filed); City of San
Antonio v. Butler, 131 S.W.3d 170 (Tex. App.—San Antonio 2004, pet. filed); City of Mexia v.
Tooke, 115 S.W.3d 618 (Tex. App.—Waco 2003, pet. granted); but see Shierk, 2000 Tex. App.
LEXIS 3706, at *4–5. Although they acknowledge the Texas Supreme Court's decision in Missouri
Pacific Railroad, noting that the phrase "sue and be sued" acts as a legislative waiver of immunity,
they disagree that the words "plead and be impleaded" should be given the same effect. Instead, they
reason that if the phrases are construed to have the same meaning, courts will "run afoul" of the
settled principle of statutory construction that the Legislature intended the entirety of the Texas Local
Government Code to be effective and, therefore, used every word for a particular purpose. Tooke,
115 S.W.3d at 622–23 (citing Tex. Loc. Gov't Code Ann. § 311.021(2) (Vernon 1998); City of
Austin v. Southwestern Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002)).
            While there certainly are distinctions that can be made between the phrases in question, we
agree that, in the context of Section 51.075, the phrases "sue and be sued" and "plead and be
impleaded" are synonymous and the latter, therefore, equally serves to waive a municipality's
governmental immunity from suit in light of the Texas Supreme Court's decision in Missouri Pacific
Railroad. See Clear Channel Outdoor, Inc., 2004 Tex. App. LEXIS 367, at *13–14. In making this
determination, we note that the original 1913 legislation granting home-rule municipalities the
authority to "plead and be impleaded in any court" has not been amended since its enactment and
that, until recently, "[t]here has never been any question about the capacity of Texas municipalities
to both sue and be sued." 22 David B. Brooks, Texas Practice § 2.02 (West 1999); see Home
Rule Act of 1913, 33d Leg., R.S., ch. 147, § 4, at 307, 310 (current version at Tex. Loc. Gov't Code
Ann. § 51.075 (Vernon 1999)).
            When interpreting statutes, courts must consider the entire statute in its appropriate context,
seeking to avoid considering disputed provisions in isolation. State v. Shumake, 131 S.W.3d 66, 75
(Tex. App.—Austin 2003, pet. filed) (citing Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 866 (Tex. 1999)). Courts must also "consider such things as the circumstances under
which the statute was enacted, former statutory provisions on the same or similar subjects, and the
consequences of a particular construction. . . . and should not give one provision an interpretation
that is inconsistent with the other provisions of the act." Id. (citing Kroger Co. v. Keng, 23 S.W.3d
347, 349 (Tex. 2000)). It is significant, therefore, that the 1858 and 1875 acts (which, like the
legislation granting authority to home-rule municipalities, have not been amended since their
enactment and remain current law), granting authority to what are today's Type A and Type B
general-law municipalities, included both the phrase "sue and be sued" and variations on the phrase
"plead and be impleaded." Brooks, supra; see Act approved Jan. 27, 1858, 7th Leg., R.S., ch. 61,
§ 9, at 69–70 (current version at Tex. Loc. Gov't Code Ann. § 51.033 (Vernon 1999)); Act
approved Mar. 15, 1875, 14th Leg., 2d C.S., ch. 100, § 1a, at 113–14 (current version at Tex. Loc.
Gov't Code Ann. § 51.013 (Vernon 1999)).


 If the two phrases were, in fact, designed to have
different meanings and the latter does not equally constitute an unambiguous waiver of immunity
from suit, as does the former, one would conclude that the Legislature intentionally waived
governmental immunity for Type A and Type B general-law municipalities, but not for home-rule
municipalities. We can conceive of no legal or policy reasons why the Legislature would make such
a distinction between different types of municipalities on the issue of waiver and are unaware of any
legislative history that would support such a position. See Clear Channel Outdoor, Inc., 2004 Tex.
App. LEXIS 367, at *13 & n.5.
            The phrases are not themselves so distinctive as to preclude us from determining that they
carry the same meaning and were meant to have the same effect. The word "sue" simply means to
"institute a lawsuit against (another party)"; the word "plead" means, among other things, to "file or
deliver a pleading." Black's Law Dictionary 1190, 1473 (8th ed. 2004). As defined by the Texas
Rules of Civil Procedure, a pleading is an original or amended petition or answer, stating the
plaintiff's cause of action or the defendant's grounds of defense. See Tex. R. Civ. P. 45, 78–82. 
Because a pleading is the vehicle used for alleging a cause of action, it is also the means by which
one party institutes a lawsuit against another, or, in other words, sues them at law. See In re L.A.M.
& Assocs., 975 S.W.2d 80, 84 (Tex. App.—San Antonio 1998, no pet.); see also Stockburger v.
Dolan, 87 P.2d 411, 413 (Cal. Dist. Ct. App. 1939) ("Pleadings are . . . the machinery by which an
issue or issues are brought to the attention of the trial court."); Utah v. Topham, 123 P. 888, 894
(Utah 1912) ("[P]leadings are the juridical means of investing a court with jurisdiction.").
            While one can certainly discern differences in their breadth, the terms "sue" and "plead" have
been used interchangeably in the past and are still usually considered to be synonymous. See The
Random House Dictionary of the English Language 1900 (2d ed. 1987). Some of the
definitions of the word "sue" include: "to institute a process in law against," "bring a civil action
against," and "to institute legal proceedings, or bring suit." Id. Similarly, to "plead" is "to make any
allegation or plea in an action at law," "to prosecute a suit or action at law," or "to allege or set forth
(something) formally in an action at law." Id. at 1486. Other dictionaries state directly that to "sue"
is to "plead," Webster's New World Dictionary of the American Language 1457 (College
ed. 1960), and to "plead" is "to institute a lawsuit" (i.e., to "sue"), Webster's Ninth New
Collegiate Dictionary 902 (1991).
            Parsing the two phrases into their component words, one can certainly identify differing
shades of meaning between "be sued" and "be impleaded." But we believe each phrase is written
as a whole and ought to be understood in that context. When each phrase is read as a single
expression—that is, as written—the two phrases seem to carry the same meaning.
            Although most courts that have addressed similar issues of waiver of governmental immunity
have done so by analyzing the phrase "sue and be sued," few have had the opportunity to consider
whether the phrase "plead and be impleaded," standing alone, has the same effect. A long line of
Georgia cases, however, offers some helpful insight. As early as 1912, the Georgia Court of Appeals
determined that a statute granting the Trustees of the University of Georgia authority to "plead and
be impleaded" also expressly waived the body's governmental immunity. First Dist. Agric. & Mech.
Sch. v. Reynolds, 75 S.E. 1060, 1061 (Ga. Ct. App. 1912). Although the Georgia Supreme Court
abandoned this long-held position in 1989, what is important to our review is that, throughout the
history of these cases, the courts continued to treat the phrases "sue and be sued" and "plead and be
impleaded" as carrying the same meaning. Self v. City of Atlanta, 377 S.E.2d 674, 676 (Ga. 1989)
(overruling those cases holding that the language waived governmental immunity); Med. Ctr. Hosp.
Auth. v. Andrews, 297 S.E.2d 28, 30 (Ga. 1982); McCafferty v. Med. Coll. of Ga., 287 S.E.2d 171,
174–176 (Ga. 1982); Busbee v. Ga. Conference, Am. Assoc. of Univ. Professors, 221 S.E.2d 437,
442 (Ga. 1975); Georgia v. Regents of the Univ. Sys. of Ga., 175 S.E. 567, 572 (Ga. 1934). Though 
Georgia courts no longer consider the language at issue a waiver of governmental immunity, it is
significant that they expressly determined the phrase "plead and be impleaded" to be "the historic
language used to authorize a body to sue and be sued." Busbee, 221 S.E.2d at 440 (citing Reynolds,
75 S.E. at 1061); see Andrews, 297 S.E.2d at 30.
            Because we agree that, in the context of Section 51.075, there is no practical difference
between the phrases "sue and be sued" and "plead and be impleaded," we are constrained by the
Texas Supreme Court's ruling in Missouri Pacific Railroad. See Clear Channel Outdoor, Inc., 2004
Tex. App. LEXIS 367, at *14. We hold that Texarkana's governmental immunity from suit was
waived and that therefore, with respect to the Seven Cities' contract claims, the trial court was correct
in overruling Texarkana's motion to dismiss.
Conclusion
            Having determined that Texarkana may assert governmental immunity as a defense against
the Seven Cities' tort claims, we hold that the Texas Tort Claims Act effectively bars those claims. 
We also hold, however, that Section 51.075 of the Texas Local Government Code effectively waives
Texarkana's immunity from suit, requiring it to defend the contract causes of action asserted by the
Seven Cities. Accordingly, as to the contract claims, we affirm the trial court's refusal to dismiss,
leaving the contract claims pending for further action in the trial court; and, as to the tort claims, we
reverse and render judgment dismissing those claims.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 1, 2004
Date Decided:             July 23, 2004