# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00504-CV

**City of Elgin, Texas, Appellant**

**v.**

**John William Reagan, as next friend of J. W. R., Jr., a child, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
### NO. 25,463, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee John William Reagan sued the City of Elgin under the Texas Tort Claims Act (TTCA), alleging that the City was negligent and grossly negligent in allowing Reagan's wife to adopt a dog that later attacked the couple's young son. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2007). The City filed a joint plea to the jurisdiction and motion for summary judgment, arguing that sovereign immunity barred Reagan's claims. In one order, the trial court denied the plea to the jurisdiction and summary-judgment motion. The City appeals. Because we determine that sovereign immunity shields the City from suit, we reverse the trial court's order and render judgment dismissing Reagan's suit for want of subject-matter jurisdiction.

## BACKGROUND

The evidence submitted to the trial court by both parties with regard to the City's joint plea to the jurisdiction and motion for summary judgment establishes the following factual

background: On August 19, 2003, Kari Reagan adopted an adult male Doberman from the City of Elgin Animal Shelter. She first met the dog during a visit to the shelter about two weeks before the adoption. During her initial visit, she spoke with Animal Control Officer Ethel Spence about the dog. Kari testified in her deposition that Spence told her that she knew the dog was good with children because the dog was brought into the shelter by children who had to move and could not take the dog with them. Spence said that she was unsure how the dog would behave around other dogs. Kari spent about fifteen minutes petting and playing with the dog and observed that he was "really friendly."

A couple weeks later, Spence called Kari at work and told her that she was going to have to euthanize the dog if Kari or someone else did not adopt him. Kari left work and went to the shelter. There, she told Spence that she would like to take the dog but that she did not have the money for the adoption fee. Spence said that she would waive the fee. Kari told Spence that she had two other dogs and four young children at home. Spence reiterated that she knew the dog was good with kids but that she was unsure of how it behaved with other dogs. Spence told Kari to take the dog home and introduce him to her other dogs. She said that if the dogs got along well, Kari should keep the new dog, but if they did not get along, she should return him to the shelter.

Kari signed adoption papers and took the dog home. She introduced him to her other dogs and let them spend time together. She stayed home for four or five hours and observed the dogs, who played together and seemed to get along well. At about 5:30 pm, she left to pick up her children from day care. Before she left, she put the new dog on a chain and tied him to a tree. Shortly after she returned with her children, a family friend, Dennis Wade, arrived to wait for Kari's husband to get home from work. While Wade waited, he and Kari sat down at a picnic table

2

and talked. Kari kept her youngest child with her, but her three other children scattered in different directions. Meanwhile, the new dog was still tied to a tree about fifteen feet behind Kari. Then, less than thirty minutes after Kari and Wade sat down, they heard growling and screaming from the direction of the dog. Kari turned around to see the dog attacking her four-year-old son, J.W.R., who she had just recently seen sitting on the ground playing with a truck. She ran to her son, pushed the dog off of him, and laid on top of him to protect him. Wade was just behind Kari and either hit the dog to get it away or grabbed the dog by the collar, keeping it from going back toward Kari and J.W.R. J.W.R. had blood on his face and was crying. Kari carried J.W.R. inside the house, where she used a towel to try to stop the bleeding. Meanwhile, John William Reagan, Kari's husband and J.W.R.'s father, arrived home and discovered what happened. Within minutes of his arrival, he shot the dog in the head, killing it. He and Kari then took J.W.R. to a hospital in Taylor, where hospital staff cleaned J.W.R.'s wounds and stopped the bleeding. Kari and Reagan were then told to take J.W.R. to another hospital to get his wounds stitched, which they did.

In August 2005, Reagan filed suit, individually and on behalf of J.W.R., against the City of Elgin, alleging that the City was negligent and grossly negligent in failing to destroy the dog and in allowing Kari to adopt it. Reagan later filed a motion to nonsuit his individual claims, which the trial court granted. In April 2006, the City filed a joint motion for summary judgment and plea to the jurisdiction, which was denied by the trial court. This appeal followed.[1]

---

[1] In October 2006, Reagan filed an amended petition, adding an allegation that the City was strictly liable for J.W.R.'s injuries because the dog was "unreasonably dangerous." Although the amended petition was filed after the appeal, we treat the amended petition as the active pleading because both parties do so in their briefs.

## STANDARD OF REVIEW

In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Thus, a governmental unit properly raises the issue by a plea to the jurisdiction. *See id.* at 225-26. We review de novo the trial court's ruling on a plea to the jurisdiction. *Id.* at 226. In reviewing a ruling on a plea to the jurisdiction, we do not weigh the merits of the claim but consider only the plaintiff's pleadings, construed in the plaintiff's favor, and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. If a plaintiff fails to plead facts sufficient to establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails

4

to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id*. at 228.

## DISCUSSION

### *Governmental or Proprietary Function*

Cities retain immunity from suit for torts committed in the performance of their governmental functions unless the legislature has expressly, by clear and unambiguous language, waived that immunity. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995). Governmental functions are acts involving purely governmental matters solely for the public benefit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). In contrast, cities are not immune from suit for torts committed in the performance of their proprietary functions. *Id*. Proprietary functions are those the city conducts in its private capacity for the benefit only of those within its corporate limits, and not as an arm of the government. *Id*. The legislature specifically designates several actions as governmental functions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) (West 2007).

The City contends that allowing members of the public to adopt animals from its shelter is a governmental function because the activity is a component of animal control, which is one of the activities expressly designated as a governmental function by the legislature. *See id*. § 101.0215(a)(33). Courts have repeatedly recognized that activities that are closely related to or necessary for the performance of governmental functions are also governmental functions. *See City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 357 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (purchase of fuel by city was governmental function because fuel was

5

necessary to perform designated governmental functions, such as police and fire protection); *City of San Antonio v. Butler*, 131 S.W.3d 170, 177-78 (Tex. App.—San Antonio 2004, pet. denied) (even though it produced profit for city, city's sale of alcohol at concert was governmental function because it was associated with designated governmental function of operating civic centers, convention centers, or coliseums).  Here, an animal-control ordinance in place at the time Kari adopted the dog stated that any animal "not claimed by its owner within the time period designated in this section shall become the property of the city," and that the City "may then either sell the animal or humanely dispose of it." *See* Elgin, Tex., Ordinance 93-26 (Aug. 18, 1993).  We conclude that allowing the adoption of animals from the City's shelter is an activity so closely related to animal control that it is a governmental function.[2]  *See Petroleum Traders*, 261 S.W.3d at 357; *Butler*, 131 S.W.3d at 177-78.

### Waiver of Immunity

We now turn to an analysis of Reagan's pleadings and pertinent jurisdictional evidence to determine whether the facts alleged establish a waiver of sovereign immunity under the TTCA.  In his petition, Reagan alleges that the City waived immunity under section 101.021(2) of

---

[2] Reagan also argues that the act of allowing the adoption of animals from the City's shelter is a proprietary function because "the adopting out of a vicious dog is an ultrahazardous activity." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)(3) (West 2007) (characterizing as proprietary function "any activity that is abnormally dangerous or ultrahazardous").  However, in considering whether the City's activity here was proprietary, we need not make a factual determination of whether the dog in this case was "vicious," and we decline to characterize the City's activity as allowing the adoption of "vicious" dogs.  Further, Reagan does not cite to, and we have not found, any legal authority in support of his contention that allowing the adoption of animals is an ultrahazardous activity.  We therefore maintain our conclusion that the City's activity is a governmental function for which the City retains immunity from suit absent an express waiver of immunity.

6

the Texas Civil Practice and Remedies Code, which states that a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). Thus, Reagan must first allege facts that show a "use" by the City that resulted in personal injury to J.W.R. The term "use" in this context is defined as "to put or bring into action or service; to employ for or apply to a given purpose." *See San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004). Reagan asserts that the City "used" the adoption process, and thus "used" the dog itself, in order to avoid putting the dog to death. The City counters that the use of a process cannot be considered the use of "tangible personal or real property." We agree with the City. Reagan does not cite to, and we have not found, any legal authority to support the proposition that use of a *process* constitutes use of *property* under the TTCA. Even if we assume that the adoption process constituted a "use" of the dog itself, the use must have actually caused the injury. *See Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). Here, the adoption of the dog occurred hours before the dog attacked J.W.R. Thus, the most that could be alleged is that the dog's adoption furnished the condition that made the injury possible, which has been deemed insufficient to constitute a "use" under the statute. *See id*. (no waiver where use of medical treatment suppressed symptoms of meningitis and patient later died); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (no waiver where patient escaped through unlocked hospital doors and later committed suicide). We therefore reject Reagan's first argument.

In a second argument, Reagan contends that this case is similar to those holding that

7

the provision of tangible property lacking an "integral safety component" constitutes a waiver of immunity. *See Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (no immunity for mental health facility that provided swimming attire to epileptic patient but did not provide life preserver); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (no immunity for university that provided uniform and equipment to football player but failed to provide knee brace). Reagan asserts that the dog's lack of an appropriate disposition to be a family dog is equivalent to a lack of an integral safety component such as a life preserver or knee brace. However, nothing in *Lowe* or *Robinson* suggests that an intangible concept such as a dog's temperament would fall within the supreme court's limited holdings, and Reagan does not cite to any other legal authority in support of his position. Further, the supreme court has specifically stated that cases such as *Lowe* and *Robinson* represent "the outer bounds" of what the court has defined as "use" of tangible personal property. *See Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005) (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996)). Thus, we decline to extend the principle of *Lowe* and *Robinson* to this case.

In a third argument, Reagan cites *San Antonio State Hospital v. Cowan* and contends that the City waived immunity because it provided Kari with a dog that was inherently unsafe. 128 S.W.3d at 245. In *Cowan*, the supreme court held that merely providing someone with personal property that is not itself inherently unsafe was not a "use" within the meaning of the TTCA. *Id*. Reagan argues that the implication of the holding is its opposite: that providing someone with personal property that *is* inherently unsafe is a "use" within the TTCA. We disagree that *Cowan* implies such a proposition, and Reagan does not cite to any other legal authority as support. The

8

supreme court stated in *Cowan* that "a governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more." *Id*. at 246. The governmental unit must itself be the user. *Id*. at 245-46. The only circumstance in which a governmental unit has been found to have "used" property merely by providing it is when the property provided lacks an integral safety component, and we have already found that exception inapplicable to this case. We therefore reject this argument.

In a fourth argument, Reagan alleges that the City has waived sovereign immunity because it would be strictly liable for J.W.R.'s injuries if it were a private person based on its decision to allow the adoption of a "vicious" dog with "dangerous propensities abnormal to its class." *See Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex. 1974) (stating that suits for damages caused by vicious animals are governed by principles of strict liability); Restatement (Second) of Torts § 509 (1977) (stating that strict liability applies when animal harms someone and possessor of animal knew or had reason to know that animal had dangerous propensities abnormal to its class). In arguing that the City knew of the dog's alleged dangerous propensities, Reagan references an article regarding this case from a local Elgin newspaper, in which a reporter stated that "Spence reported she told the family repeatedly that the animal was aggressive toward other animals." However, even if the City could be held strictly liable as a private person based on Spence's alleged knowledge of the dog's dangerous propensities, Reagan must still establish that the City waived immunity by "using" property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). We have already determined that Reagan has not done so here. Further, at least two of our sister courts

have held that the TTCA does not waive sovereign immunity for strict-liability claims.[3]  *See*

*EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist.*, 176 S.W.3d 330, 339

(Tex. App.—Houston [1st Dist.] 2004, pet. dism'd); *University of N. Tex. v. Harvey*, 124 S.W.3d

216, 224 (Tex. App.—Fort Worth 2003, pet. denied).  Because Reagan has not established that the

City waived immunity, we reject his strict-liability argument.

In a final argument, Reagan contends that the City's failure to euthanize the dog and

its decision to allow the adoption of the dog were ministerial functions, for which a governmental

entity is not immune.  In support of his assertion, Reagan cites section 101.056 of the Texas Civil

Practice and Remedies Code[4] and quotes from *University of Texas at San Antonio v. Trevino*,

---

[3]  One Texas case, *City of Dallas v. Heard*, 252 S.W.3d 98, 112 (Tex. App.—Dallas 2008, pet. denied), found a waiver of immunity based on a theory of strict liability where a gorilla at the Dallas Zoo escaped from its enclosure and attacked zoo visitors.  The court held that the city waived immunity under section 101.021(2) of the Texas Civil Practice & Remedies Code because the city "used" the gorilla as an attraction to generate revenue and because the city would be strictly liable as a private person based on its possession of a wild animal.  *Id*. at 110, 112.  *Heard* is distinguishable from this case for two reasons: (1) unlike the court in *Heard*, we have determined that Reagan did not allege a "use" of property; and (2) the *Heard* court based its decision in part on the fact that the gorilla was a wild animal, a factor not present in this case.  *See id*. at 112; *see also Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex. 1974); Restatement (Second) of Torts § 507 (1977) (stating that possessor of wild animal is subject to liability for harm done by animal to another, even if possessor exercised utmost care to confine animal or otherwise prevent it from doing harm).

[4] Section 101.056 is titled "Discretionary Powers" and states the following:

This chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West 2007).

153 S.W.3d 58, 61 (Tex. App.—San Antonio 2002, no pet.), in which the court stated that "[i]f the injury results from the formulation of policy, the governmental entity is immune . . . [but] [i]f the injury results from the negligent implementation of policy, the governmental entity is not immune." However, the *Trevino* court specifically stated that section 101.056 is an *exception* to the waiver of immunity and that its purpose is "to avoid judicial review of governmental policy decisions." 153 S.W.3d at 61. In other words, even if a plaintiff establishes a waiver of immunity under the TTCA, the governmental entity still maintains immunity under section 101.056 unless the entity's action was ministerial. *Id*. As a result, we reach an analysis under section 101.056 only after a plaintiff has established a waiver of immunity, which we have already concluded Reagan did not do here. Thus, because Reagan has not established that the City waived its sovereign immunity, we need not decide whether the City's activity was discretionary or ministerial.

***Opportunity to Amend***

Reagan also requests that we allow him an opportunity to amend his petition to assert a claim for breach of contract. Reagan cites *City of Texarkana v. City of New Boston*, 141 S.W.3d 778 (Tex. App.—Texarkana 2004, no pet.), in arguing that a municipality does not enjoy sovereign immunity for contract claims. In *City of Texarkana*, the court held that language in the Texas Local Government Code stating that a municipality "may plead and be impleaded" in any court constituted a waiver of immunity from suit. *Id*. at 789. However, *City of Texarkana* was subsequently overturned in *Tooke*, which held that the "plead and be impleaded" language in the code does not by itself waive immunity. *Tooke*, 197 S.W.3d at 342-43. Thus, even if we granted Reagan's request to add a breach of contract claim to his petition, the petition still would not be sufficient.

11

*See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (stating that merely pleading more facts in support of breach of contract claim will not overcome governmental entity's immunity from suit). Reagan would still need to show a waiver of immunity, which he has not done and cannot do given the facts of this case. Accordingly, we overrule Reagan's request.

## CONCLUSION

Because the pleadings and jurisdictional evidence demonstrate that Reagan's suit incurably falls outside any waiver of sovereign immunity, we reverse the trial court's order and render judgment dismissing Reagan's suit for want of jurisdiction.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Rendered

Filed: February 26, 2009